Filed 12/11/25  P. v. Brown CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>KEVIN TYRONE BROWN,<br><br>　　　　Defendant and Appellant. | C102126<br><br>(Super. Ct. No. 24FE004159) |

　　　　Appointed counsel for defendant Kevin Tyrone Brown filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Finding no arguable error that would result in a disposition more favorable to defendant, we will affirm the judgment. We will, however, order minor corrections to the abstract of judgment.

1

BACKGROUND

In 2018, B.H.,[1] the victim, met defendant in Las Vegas, Nevada, where he assisted her in becoming a prostitute working in the casinos. When B.H. was arrested for prostitution, she could no longer work in the casinos. B.H. turned to working the streets in Las Vegas. B.H. became pregnant with defendant's child. After a domestic violence incident perpetrated by defendant, B.H. relocated to California. When B.H. gave birth to her daughter with defendant in early 2021, he traveled to California, and they resumed their relationship.

Approximately two months after giving birth to the child, B.H. resumed working as a prostitute on the streets of Sacramento. She worked from March or April 2023, to October 2023. B.H. primarily worked on a portion of Stockton Boulevard commonly referred to as "The Blade." Defendant stayed home with their daughter and B.H.'s first child. Defendant ordered Uber rides for B.H. from their residence to Stockton Boulevard. When B.H. was done on Stockton Boulevard, she would contact defendant to order her a second ride to bring her back to their residence. B.H. engaged in prostitution work multiple times per week.

B.H. gave the money she made from prostitution—either paid in cash or through electronic payment—to defendant. If B.H. wanted to keep some of the money, she had to ask defendant.

B.H. thought of defendant as her boyfriend, but she also believed he was her pimp. B.H. thought this because defendant controlled the money and other aspects of her life.

Approximately one week into their relationship, defendant started being violent with B.H. The violence started with a slap and escalated to strangulation to the point

---

[1] To protect her privacy, we will refer to the victim by her initials. (Cal. Rules of Court, rule 8.90(b)(4).) Undesignated rule references are to the California Rules of Court.

where B.H. lost control of her bladder. Defendant also gave B.H. a black eye and kicked her in the ribs. As a result of this violence, whenever defendant wanted B.H. to work as a prostitute, she worked as a prostitute. B.H. knew defendant could hurt her and did not want to risk it.

In January 2024, B.H. began posting ads online where sex buyers viewed them, would contact B.H., and arrange a sex act and cost. These were " 'in-calls' " where the sex buyer traveled to B.H.'s location to complete the sex act. B.H. created the online ads with defendant's assistance, including taking the photos used in the advertisements. Defendant instructed B.H. on where to post the online ads, specifically which websites to use. Defendant also instructed B.H. not to use her real cell phone number; she obtained a fictitious number. From time to time, defendant instructed B.H. to " 'bump up' " the online ad so it appeared at the top of the list that potential sex buyers viewed.

In January 2024, B.H. did 10 to 12 "in-calls" in her apartment. Before the sex buyer came to the apartment, defendant knew who was coming and the amount of money to be paid. Defendant waited in the back bedroom while the sex act was performed in the living room. When the buyer left, B.H. gave the money to defendant. B.H. made $1,500 a month.

Most of the time, B.H. was paid in cash. For electronic payments, B.H. had defendant's Cash App application on her cell phone to easily transfer money from her account to his account. The username on defendant's Cash App account was a dollar sign followed by the name "Kash B0112." "Nino Kash" was defendant's moniker. B.H. had "Nino Kash" tattooed on her body with a crown above. The crown signified that defendant was her "king." Such tattoos are referred to as "branding" to mark a sex worker as the property of a sex trafficker. B.H. also had defendant's name, "Kevin," tattooed on the right side of her face.

B.H. last worked for defendant as a prostitute in February 2024.

On March 10, 2024, B.H. texted 911 that defendant was holding her in a back room, and she needed help. A deputy sheriff traveled to the location, an apartment complex. The sheriff's department sent a helicopter with two deputies for a visual of the complex. The deputies saw a woman run out of an apartment and hide under a vehicle. Shortly after, defendant ran out of the apartment and was detained.

At the scene, B.H. told a deputy that defendant had snuck up behind her, pushed into her apartment as she was opening the door, and refused to leave. They argued all night long; defendant slapped her face twice. Defendant also cut B.H.'s wrist with a knife. Defendant took her cell phone and held her down in the back room so she could not leave. When he fell asleep, B.H. called 911, and later ran out the door and hid under a neighbor's car. Defendant heard the door close and chased her.

In April 2024, a complaint deemed an information charged defendant with inflicting corporal injury resulting in a traumatic condition to B.H., the parent of defendant's child (Pen. Code,[2] § 273.5, subd. (a); count one), false imprisonment (§ 236; count two), violation of a protective order (§ 166, subd. (c)(1); count three), pimping (§ 266h, subd. (a); count four), and pandering (§ 266i, subd. (a)(2); count five). As to count one, the information further alleged defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) and suffered a prior domestic violence conviction (§ 273, subd. (a), (f)(1)). The information also alleged three aggravating factors: Defendant took advantage of a position of trust (rule 4.421(a)(11), engaged in violent conduct that indicated a serious danger to society (rule 4.421(b)(1), and was on probation when the crime was committed (rule 4.421(b)(4)).

At the close of the prosecution's case in chief, the trial court granted the People's motion to dismiss count three for insufficient evidence.

---

[2]     Undesignated section references are to the Penal Code.

The jury found defendant not guilty on count one but guilty of the lesser included offense of battery against the mother of defendant's child (§ 243, subd. (e)(1)), and guilty on counts two, four, and five. In a bifurcated trial, the trial court granted the People's motion to dismiss the aggravating factor alleged under rule 4.421(b)(1). The jury found true the aggravating factors alleged under rules 4.421(b)(4) and 4.421(a)(11).

On September 13, 2024, the probation department filed a memorandum recommending that the trial court take judicial notice of its records and find that defendant violated probation in Sacramento Superior Court case Nos. 23FE017512 and 22FE020721. At the sentencing hearing on September 26, 2024, the trial court found defendant violated probation in these cases by failing to obey all laws. The court revoked and terminated probation but did not impose any additional prison time. The court lifted the stay on the $150 restitution fine previously imposed.

Turning to the charges on which defendant was found guilty by the jury, the trial court sentenced defendant to state prison for the upper term of six years on count four, the upper term of six years on count five (stayed under § 654), and one-third the middle term of eight months on count two, for an aggregate sentence of six years eight months. The court also sentenced defendant to 364 days in county jail on count one (stayed under § 654). The court awarded defendant 401 days of presentence custody credit. The trial court imposed an $1,800 restitution fine (§ 1202.4), a misdemeanor restitution fine, and mandatory minimum assessments.

## DISCUSSION

Appointed counsel filed an opening brief that sets forth the facts and procedural history of the case and requests this court review the record and determine whether there are any arguable issues on appeal. (*People v. Wende, supra,* 25 Cal.3d 436.) Defendant was advised by counsel of his right to file a supplemental brief within 30 days from the date the opening brief was filed. More than 30 days have elapsed, and defendant has not filed a supplemental brief.

5

Having undertaken an examination of the entire record pursuant to *Wende*, we note that the abstract of judgment indicates that the total sentence was six years, yet the trial court in its oral pronouncement imposed a sentence of six years on count four, and eight months on count two, for an aggregate sentence of six years eight months. The trial court imposed an additional, separate misdemeanor restitution fine of $150 in light of the lesser charge on count one in its oral pronouncement, also not indicated on the abstract. We will order the trial court to correct these errors on the abstract of judgment by adding eight months to the indicated sentence and the misdemeanor restitution fine. Finding no other errors that would result in a disposition more favorable to defendant, we will affirm the judgment.

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment in accordance with this opinion and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.

\s\
Krause, J.

We concur:

\s\
Duarte, Acting P. J.

\s\
Boulware Eurie, J.

6